IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER SCOTT HOOPER,<br><br>　　Plaintiff,<br>v.<br><br>SCREENING REPORTS, INC.<br><br>　　Defendant. | Case No.: 1:24-cv-00157<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Christopher Scott Hooper ("Plaintiff" or "Mr. Hooper") by and through his counsel brings the following Complaint against Screening Reports, Inc. ("Defendant") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report that Defendant published to Plaintiff's potential landlord, which falsely portrayed Plaintiff as a convicted felon.

## INTRODUCTION

1.　This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.　Defendant is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these tenant screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3.　Defendant assembled and published an inaccurate tenant screening report to Plaintiff's prospective landlord, which included a felony larceny conviction.

1

4. In fact, Plaintiff has never been convicted of felony larceny in his life.

5. Plaintiff's prospective landlord denied Plaintiff's housing application after receiving the tenant screening report from Defendant, in which Defendant published the inaccurate felony larceny conviction.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records from Grand Traverse County, Michigan regarding the inaccurate offense prior to publishing the information to Plaintiff's prospective landlord.

7. Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that Plaintiff has never been convicted of felony larceny.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

10. Defendant's inaccurate report cost Plaintiff the ability to rent the apartment unit that was suitably accommodating of his needs, causing him injury in the form of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

11. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and

emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

13. Christopher Scott Hooper ("Plaintiff" or "Mr. Hooper") is a natural person residing in Traverse City, Michigan, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Defendant Screening Reports, Inc. ("Defendant") is a Florida corporation doing business throughout the United States, including the State of Michigan and in this District, and has a principal place of business located at 2900 Monarch Lakes, Blvd., Suite 201, Miramar, FL 33027 and can be served through their Registered Agent, CSC- Lawyers Incorporating Service (Company), located at 3410 Bell Chase Way Ste. 600, Lansing, MI 48911

15. Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

23. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the one Defendant prepared in Plaintiff's name.

24. The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

25. In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Defendant disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

30. Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and

disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

31. Tenant Screening companies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

32. Given that Defendant is in the business of selling tenant screening reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

33. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

34. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

35. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

36. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a misdemeanor as a felony.

37. As a provider of tenant screening reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association

6

("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for an Apartment with Aspen Hills

38. Plaintiff has been looking for an apartment near his father's home so he can more easily visit his father daily as he continues to take care of him.

39. In or around November 2023, Plaintiff toured a one-bedroom apartment in Aspen Hills ("the Aspen Hills Apartments"). The Aspen Hills Apartments had an available apartment that was ideal because it was affordable subsidized housing. The apartment was also ideal because it was clean, in a safe neighborhood, near his father's home and allowed Plaintiff to move in and live with his dog once approved.

40. Happy to have found an ideal apartment that he was looking for, and in accordance with his desires, Plaintiff applied in-person for the apartment on November 17, 2023..

### Defendant Published an Inaccurate Tenant Screening Report to Aspen Hill Apartments

41. Continental Management, LLC, property management company to the Aspen Hills Apartments, contracted with Defendant to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

42. On or about November 17, 2023, Continental Management, LLC ordered a tenant screening report about Plaintiff from Defendant.

43. On or about November 20, 2023, Defendant sold a tenant screening report about Plaintiff to Continental Management, LLC, wherein Defendant published information including a compilation of Plaintiff's credit history, criminal history, and civil records history.

44.     The tenant screening report, identified as the Summary Report by Defendant is a consumer report regulated by the FCRA.

45.     Within that tenant screening report, Defendant published inaccurate information about Plaintiff.

46.     Specifically, Defendant's tenant screening report about Plaintiff included a grossly inaccurate and stigmatizing felony larceny conviction from Traverse County, Michigan, which appeared in the tenant screening report as follows:



47.     The felony larceny conviction reported by Defendant about Plaintiff is inaccurate.

48.     Plaintiff has never been convicted of felony larceny in his life.

49.     A cursory review of the widely available underlying public court records confirms that Plaintiff never pled guilty to or was convicted of felony larceny conduct. Rather, the public record confirms that Plaintiff was only ever convicted of *misdemeanor* attempted larceny.

50. The sole reason the inaccurate felony larceny conviction was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

51. Had Defendant followed reasonable procedures, it would have discovered that Plaintiff has never been convicted of felony larceny and that it should not have reported the same in its screening report about Plaintiff.

52. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Aspen Hill Apartments Denies Plaintiff's Housing Application**

53. On December 4, 2023, Plaintiff was notified by Aspen Hills Apartments that his housing application was denied as a direct result of the felony conviction reported by Defendant.

54. Shortly thereafter, Plaintiff obtained a copy of the tenant screening report and was shocked and humiliated upon reviewing the felony larceny conviction contained within the tenant screening report.

55. Plaintiff contacted the management personnel at the Aspen Hills Apartments and informed them that Defendant's report about him was inaccurate and that he has never been convicted of felony larceny in his life.

56. Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that he was a convicted felon, both in relation to the Aspen Hills Apartments apartment, but also the impact of the same on his future.

57. Specifically, Defendant reported a felony larceny conviction that is clearly labeled in the underlying court records as a *misdemeanor*. The underlying public court record information was widely available to Defendant prior to publishing Plaintiff's tenant screening report to Aspen Hills Apartments, but Defendant failed to perform even a cursory review of such information.

58. Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, Aspen Hill Apartments formed a negative opinion about Plaintiff and/or moved on to other candidates.

59. Defendant's false report cost Plaintiff a housing opportunity that met his needs, including those attendants to affordability, safety, and proximity to his father, work, friends, and family.

60. Plaintiff was looking forward to living at Aspen Hills Apartments because it was in a safe neighborhood, near his father's home whom Plaintiff wanted to live close to and to continue to care for, was affordable and was otherwise ideal in every respect.

61. Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek housing, Plaintiff has not found anything nearly as ideal as the Aspen Hill Apartments As of filing, he is still forced to stay with his father and friends, and he has a dog to take care of so the situation is extremely stressful and difficult on his relationships.

62. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

63. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his

reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

64. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

65. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

66. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

67. At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

68. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report it sold about Plaintiff as well as the information it published within the same.

69. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

70. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages

11

in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

71. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;
ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;
iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,
iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 16th day February 2024.

**CONSUMER ATTORNEYS**

By: /s/ Beth K. Findsen
Beth K. Findsen, AZ No. 023205
CONSUMER ATTORNEYS
8245 N. 85th Way,
Scottsdale, AZ 85258
T: 602-807-6676
F: 718-715-1750
E: bfindsen@consumerattorneys.com

*Attorneys for Plaintiff,*
*Christopher Scott Hooper*